## 1334. BURCH *v.* CITY OF OCILLA.

1. A license granted by a municipal corporation can not be transferred by the licensee, without the consent of the licensing municipality.
2. A Confederate veteran having a certificate authorizing him to peddle and conduct business in any county or municipality in this State without procuring a license, which certificate has been regularly granted to him under the provisions of the Political Code, § 1642 et seq., as amended (Acts 1897, p. 24, Van Epps' Code Supplement, § 6146 *a*), is not subject to a license tax imposed upon the sale of "near beer."

5

(*a*) Where the proof shows that the "near beer" or other liquid sold by such Confederate veteran is not·intoxicating, a municipality is expressly forbidden to charge him a license tax.

(*b*) If the liquid sold is intoxicating, while the veteran's license would not protect him from the penalties affixed to the violation of the prohibition law, the municipality would have no authority to license its sale.

Certiorari, from Irwin superior court—Judge Whipple.   July 23, 1908.

Argued October 6,—Decided October 26, 1908.

*T. L. Griner, Hines & Jordan,* for plaintiff in error.

*J. J. Walker, Mayson & Hill,* contra.

RUSSELL, J.   J. M. Burch was convicted in the recorder's court of the violation of an ordinance of the City of Ocilla, which prescribed a license of $3,000 for any one engaged in selling "near beer" in that city, and provided penalties for the violation of the ordinance.   The case was carried, by certiorari, to the superior court, where the certiorari was overruled; and exception is taken to that judgment.   The ordinance under which the defendant was found guilty declares, that, from and after June 20, 1908, all persons, firms, or corporations who sell or offer for sale "near beer" within the city limits of Ocilla, Georgia, shall first pay into the city treasury the sum of $3,000, annually, in advance, and receive therefor a license to carry on said business.   The second section of the ordinance prescribes a penalty for any one who may conduct a business in violation of such ordinance.   Upon the trial in the recorder's court it was shown by testimony, as well as by the admission of the defendant himself, that he had sold "near beer" in the city of Ocilla after the passage of the ordinance in question; but the testimony was uncontradicted that the "near beer" sold by the defendant was not intoxicating.   One witness testified, that he had frequently seen men drink as many as eleven glasses without showing any effect from it, and that the witness himself had drunk a keg or two in all, drinking at times as much as he could hold, and that it did not intoxicate him a particle.   It was further shown in the testimony, without contradiction, that the "near.beer" in question had no more alcohol in it than lemon extract and other drinks sold at soda founts. The defendant introduced, in his defense, a license issued to Taylor & Warren, which had been transferred to him by the

licensees. The receipt or license was as follows: "$1.50. City of Ocilla, No. 16. Received of Taylor & Warren one & 50/100 dollars, entitling the holder to carry on the business of soda water and cold drinks in the city of Ocilla, Ga., until December 1, 1908. [Signed] D. W. Paulk, Clerk and Treasurer." Upon the back was the following transfer: "For value received we hereby transfer the within license to J. M. Burch, Ocilla, Georgia, June 20, 1908. [Signed] J. M. Warren, T. R. Taylor." The defendant further introduced the following certificate from the ordinary of Pulaski County: "Georgia, Pulaski County. Ordinary's Office. August 13, 1901. I, P. T. McGriff, ordinary of said county, certify that John M. Burch, a disabled Confederate soldier of said county, has come before me and taken the oath prescribed by law, required of disabled Confederate soldiers, to authorize them to peddle or conduct business in any town, city, county, or counties in this State, and is therefore authorized to peddle or conduct business in any county or municipality in this State without procuring a license or being subject to tax therefor, provided he shall not peddle or deal in ardent and intoxicating drinks. Given under my official signature and seal of office, the day and year above written. P. T. McGriff, Ordinary." The license which was issued to Taylor & Warren by the City of Ocilla was, upon motion, excluded from the evidence, by the recorder.

1. We think that the license issued to Taylor & Warren was properly excluded from the evidence. Waiving consideration of the other objections, it had not been properly transferred to the defendant, because the consent of the municipal corporation had not been obtained to the transfer. But even had this license been properly transferred, it can hardly be questioned, we think, that the City of Ocilla could subsequently have passed the ordinance regulating the sale of "near beer," for the reason that soda water and cold drinks would not necessarily include "near beer."

We think, however, that the certificate issued by the ordinary of Pulaski county absolutely exempted the defendant from the operation of the "near beer" ordinance, and that for that reason the recorder erred in adjudging him guilty of violation of the ordinance, and the judge of the superior court erred in overruling his petition for certiorari. Under the Political Code (§1642 et

seq., as amended by the act of 1897, Acts of 1897, p. 24; Van Epps' Code Supplement, §6146 *a*), indigent and disabled Confederate soldiers, upon compliance with the requirements of law, are licensed to conduct any business in any municipality of this State, without procuring a license or being subject to any license tax, provided that the business conducted is not that of dealing in ardent and intoxicating drinks.

The evidence in this case shows that the drinks sold by the defendant were not intoxicating; and, therefore, clearly the defendant was within the terms of the license. Indeed, the City of Ocilla was compelled to prove that the liquids sold were not intoxicating, or else the city's case was wrecked, because the recorder would have no jurisdiction to try for the sale of intoxicating liquors, the jurisdiction as to this matter being exclusively in the State. Upon the proof that the defendant was a Confederate veteran, the case stood thus: If the evidence disclosed that the liquors sold were intoxicating, he was amenable to the State authorities. If the testimony showed that the liquors sold by him were nonintoxicating, as it did, he could not be convicted, because he had been properly authorized by law to conduct the business of selling such non-intoxicating drinks, and every municipal corporation in the State had been forbidden to exact from him any license tax therefor.

It is unnecessary for us now to determine whether the ordinance in question is unconstitutional or not. We do not think it is unconstitutional, but certainly it can not operate to repeal a general law of the State, which exempts disabled and indigent Confederate soldiers from the operation of all such ordinances. Under that law any disabled or indigent Confederate soldier may peddle or conduct business in any town, city, or county, without paying license for the privilege, provided this license does not authorize him to deal in ardent or intoxicating beverages.

Burch's certificate from the ordinary was prima facie evidence of his being a disabled soldier. There was no evidence to rebut it. Under the decision in *Hartfield* v. *Columbus,* 109 *Ga.* 113 (34 S. E. 288), Burch has the right to carry on as many lines of business as he is able to conduct, with the exception of those prohibited. The mere fact that one of the witnesses testified that the "near beer" sold contained enough alcohol to preserve it

would not afford evidence that it was an ardent drink, any more than an intoxicating drink. "'Ardent spirits' is a term applied to liquors obtained by distillation, such as rum, whisky, brandy, and gin." Sarlls v. U. S., 152 U. S. 572 (14 Sup. Ct. 721, 38 L. ed. 556).

According to the proof, the drinks sold by the defendant were neither ardent nor intoxicating. The learned judge of the superior court, in the opinion filed in connection with his judgment dismissing the certiorari, says: "In my opinion, the sale of 'near beer' is in a class distinct and to itself, with reference to the classification of different businesses. It has come into existence as an outgrowth of the new prohibition law of the State, and it is not to be classed in the same class with 'soft drinks' usually sold at soda fountains, according to my judgment. Its very name of 'near beer' implies that it is a beverage, and that it approaches beer, with reference to its alcoholic qualities, as nearly as it is safe to do so under the State prohibition law. The evidence of the City of Ocilla showed, that in this case it was sold as a beverage, and that it was alcoholic to some extent, and that the party from whom the plaintiff in certiorari purchased the business had obtained a Federal revenue license. The policy of the State, as evidenced by the last prohibition act, is against the sale of alcoholic beverages, at least those which intoxicate if drunk to excess. The policy of the City of Ocilla, as evidenced by its ordinance fixing a tax of $3,000, is against the sale of such beverages as 'near beer.' The policy of the State with reference to exempting old soldiers from paying a tax to do business, as is evidenced by the Acts of 1897, p. 24, and the Acts of 1898, p. 46, is that they shall not carry on such business as is obnoxious to the general trend of State legislation, and, by inference, to the municipality involved." The view of the judge of the lower court seems to have been that the 'near beer' sold being alcoholic to some extent, either thereby the defendant was conducting a business of selling ardent and intoxicating drinks, or, if the drinks being sold by him were not ardent and intoxicating, then the City of Ocilla had the right to require the license fee of $3,000, regardless of the State exemption, because of the policy adopted by the municipality. We can not concur in either of these views. As we have already stated, Burch was not violating the terms of

his State license; because the "near beer" he sold was, according to the evidence, neither ardent nor intoxicating. If he was selling either ardent or intoxicating drinks, the municipality could neither license him nor punish him for selling without a license, the power to license the sale of such drinks being forbidden by the State under the terms of the prohibition bill, and the right to punish being also reserved by the State.

Upon the proposition that it is the policy of the State to assist in the regulation by municipalities in the imposition of license taxes, this policy must yield to one much more to be respected,— that of forbidding the imposition of license taxes upon disabled Confederate soldiers. No policy has been more tenaciously or more properly adhered to in this State than that of extending to Confederate soldiers, with proper qualifications, every possible exemption not forbidden by the constitution. It is beyond the power of the legislature to pass an exemption in their favor as to their property tax, but it is within the power of the legislature, and the policy of the State, to exempt certain classes of Confederate veterans from all special license taxes. When this general law of the State—the creator—is brought in conflict with the ordinances of a municipality—the creature of the State—the creature must yield and do obedience to the creator. *Judgment reversed.*